[Cite as *Bradley v. Islamic Ctr. of Peace, Inc.*, 2021-Ohio-3756.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PAUL BRADLEY, AS ACTING TREASURER OF MONTGOMERY COUNTY, OHIO | : | |
| | : | |
| | : | Appellate Case No. 29134 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2017-CV-3927 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| ISLAMIC CENTER OF PEACE, INC., et al. | : | |
| | : | |
| Defendant-Appellant | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of October, 2021.

. . . . . . . . . . .

NATHANIEL S. PETERSON, Atty. Reg. No. 0095312, THOMAS J. BRODBECK, Atty. Reg. No. 0093920 and MICHELE PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorneys, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

WORRELL A. REID, Atty. Reg. No. 0059620, 7805 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Appellant, Islamic Center of Peace, Inc., appeals the trial court's order confirming a tax foreclosure sale, ordering the issuance of a deed to the purchaser, and ordering distribution of the sale proceeds. The Center asserts that the trial court erroneously distributed the sale proceeds, which resulted in the Center's being denied sale proceeds to which it was entitled. Finding no merit in the Center's contention, the trial court's judgment will be affirmed.

**Facts and Procedural History**

{¶ 2} This case began over four years ago when Appellee, the Montgomery County Treasurer, filed a tax foreclosure complaint under R.C. 5721.19 asserting that the Center had defaulted upon its obligation to pay assessed property taxes for the real estate located near the intersection of North Keowee Street and East Helena Street in Dayton – specifically Parcel Nos. R72 05706 0023, R72 05706 0024, R72 05706 0033, R72 05706 0034, and R72 05706 0044. The trial court sustained the Treasurer's summary judgment motion, and ultimately, in January 2019, the trial court filed an Amended Final Judgment Entry finding that the Treasurer had the first and best lien in the amount of $82,126.79. The Center appealed the Amended Final Judgment Entry. In August 2019, we affirmed the trial court's judgment. *Rice v. Islamic Center of Peace, Inc.*, 2019-Ohio-3396, 142 N.E.3d 156 (2d Dist.). The case then returned to the trial court so that a tax foreclosure sale could occur. In October 2020, the trial court filed a Second Amended Final Judgment Entry which, as relevant to this appeal, ordered that the real estate be sold in the manner prescribed by R.C. 5721.19 in an amount not less than $84,126.79, which amount included $2,000 as the estimated cost of the action. In January 2021, the real

estate sold at a sheriff's sale for $146,000; in April 2021, the Treasurer filed a motion requesting the trial court to confirm the sale, to transfer the deed to the purchaser, and to distribute the sale proceeds.  Concurrently, the Center filed a " * * * Motion To Recover Excess Proceeds" in the amount of $57,401.71,[1] with this amount premised upon the Center's contention that the Treasurer's delinquent tax recovery could not exceed the $82,126.79 tax delinquency set forth in the October 2020 Second Amended Final Judgment Entry.  The trial court, by implication, overruled the Center's motion when it approved and filed an order confirming the sheriff's sale, ordering that the deed be transferred to the purchaser, and ordering the following distribution of the $146,000 sale proceeds:

> *First:* To the Clerk of Courts of Montgomery County, Ohio, as payment of the costs of this action:                    $4,290.00
>
> *Second:* To the Sheriff of Montgomery County, Ohio, as payment for preparation of the Deed:                    $125.00
>
> *Third:* To the Treasurer of Montgomery County, Ohio for deposit in the DTAC Fund:                    $7,789.90
>
> *Fourth:* To the Treasurer of Montgomery County, Ohio as partial payment for taxes, assessments, charges, penalties and interest:      $133,795.10
>
> {¶ 3} This appeal followed.

## Analysis

{¶ 4} The Center's sole assignment of error is as follows:

---

[1] The Center's motion asserted the right to recover $59,405.71, but when the expenses the Center concedes were appropriate were deducted, the amount was reduced to $57,401.71.

The Trial Court's Journal Entry Confirming Sale And Ordering Deed And Distribution, wherein the Court ordered that the amount of $133.795.10 be paid to the County Treasurer, was contrary to law in light of the fact that the Second Amended Final Judgment Entry (the "Decree of Foreclosure") found that the County Treasurer had a first and best lien, and judgment, for only $82,126.79.

{¶ 5} The Center's argument focuses on R.C. 5721.19(A), which states in relevant part as follows:

(A) In its judgment of foreclosure rendered with respect to actions filed pursuant to section 5721.18 of the Revised Code, the court * * * shall enter a finding with respect to each parcel of the amount of the taxes, assessments, charges, penalties, and interest, and the costs incurred in the foreclosure proceeding instituted against it, that are due and unpaid. The court * * * may order each parcel to be sold, without appraisal, for not less than either of the following:

(1) The fair market value of the parcel, as determined by the county auditor, plus the costs incurred in the foreclosure proceeding;

(2) The total amount of the finding entered by the court * * * including all taxes, assessments, charges, penalties, and interest payable subsequent to the delivery to the county prosecuting attorney of the delinquent land tax certificate or master list of delinquent tracts and prior to the transfer of the deed of the parcel to the purchaser following confirmation of sale, plus the costs incurred in the foreclosure proceeding. For purposes of determining

such amount, the county treasurer may estimate the amount of taxes, assessments, interest, penalties, and costs that will be payable at the time the deed of the property is transferred to the purchaser.

{¶ 6} The Center argues that since the Treasurer "elected" to sell the real estate for "no less than $84,126.79" (as opposed to the real estate's fair market value), it "has waived the right to be paid any more [than this] amount." In support of this argument, the Center states that it "relied" on the $84,126.79 amount, did not appeal the October 2020 "Second Amended Final Judgment [Entry], did not pay the taxes, did not file for bankruptcy, [or] otherwise [try] to avoid the sale of the [real estate]." The Center further states that if the Treasurer "wanted to collect more than the judgment amount [$84,126.79], [this] should have [been] made * * * perfectly clear so that [the Center] could have taken the proper steps to protect the property." Based upon this argument, the Center asserts that it was entitled to the sale proceeds in excess of $84,126.79.[2] The Center additionally argues its due process rights were violated by allowing the Treasurer to collect "more than" the judgment amount.

{¶ 7} In response, the Treasurer points to R.C. 5721.19(D), which states in relevant part as follows:

(D) * * * [U]pon the confirmation of a sale, the proceeds of the sale shall be applied as follows:

(1) The costs incurred in any proceeding filed against the parcel pursuant to section 5721.18 of the Revised Code shall be paid first.

[2] This amount is $59,873.21 ($144,000 - $84,126.79) which, of course, is somewhat inconsistent with the amount set forth in the Center's " * * * Motion To Recover Excess Proceeds" filed in the trial court.

(2) Following the payment required by division (D)(1) of this section, the part of the proceeds that is equal to five per cent of the taxes and assessments due shall be deposited in equal shares into each of the delinquent tax and assessment collection funds created pursuant to section 321.261 of the Revised Code. If a county land reutilization corporation is operating in the county, the board of county commissioners, by resolution, may provide that an additional amount, not to exceed five per cent of such taxes and assessments, shall be credited to the county land reutilization corporation fund created by section 321.263 of the Revised Code to pay for the corporation's expenses. If such a resolution is in effect, the percentage of such taxes and assessments so provided shall be credited to that fund.

(3) Following the payment required by division (D)(2) of this section, the amount found due for taxes, assessments, charges, penalties, and interest shall be paid, including all taxes, assessments, charges, penalties, and interest payable subsequent to the delivery to the county prosecuting attorney of the delinquent land tax certificate or master list of delinquent tracts and prior to the transfer of the deed of the parcel to the purchaser following confirmation of sale. * * *

There is no dispute that the sale proceeds were distributed in the manner prescribed by R.C. 5721.19(D). Thus, the Treasurer asserts that the Center's arguments are without merit.

{¶ 8} "Waiver is * * * essentially * * * a matter of intention. Thus, a prerequisite ingredient of waiver of a right * * * consists of an intention to relinquish it. Indeed, the

essence of a waiver, as indicated by the definition, is the voluntary and intentional relinquishment of a known right * * *. Mere negligence, oversight, or thoughtlessness does not create a waiver." *State Farm Mut. Auto. Ins. Co. v. Ingle,* 180 Ohio App.3d 201, 2008-Ohio-6726, 904 N.E.2d 934, ¶ 32 (2d Dist.), quoting *Hicks v. Estate of Mulvaney*, 2d Dist. Montgomery No. 22721, 2008-Ohio-4391, ¶ 13. "By contrast, the doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct." *Id.*, quoting *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 295, 638 N.E.2d 174 (9th Dist.1994). There is nothing in the record to support a suggestion that the Treasurer intentionally abandoned the right to collect all property taxes due at the time of the foreclosure sale. Moreover, the Center, though using the term "waiver", actually makes an equitable estoppel argument. As such, we will analyze the Center's argument as an equitable estoppel assertion.

{¶ 9} "To be successful on a claim of equitable estoppel, '[t]he party claiming the estoppel must have relied on conduct of [the other party] in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not know that [the other party's] conduct was misleading.' " *Shampton v. City of Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 34, quoting *Ohio St. Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990), citing *Heckler v. Community Health Serv.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The Center's equitable estoppel assertion fails because its purported reliance on the $84,126.79 judgment amount set forth in the October 2020 Second Amended Final Judgment Entry was not reasonable. The Center

had, at least, constructive notice of the Treasurer's right, under R.C. 5721.19(D)(3), to collect all unpaid property taxes due at the time the deed was transferred to the purchaser. *Shampton* at ¶ 34. Though the better practice would have been to update the tax delinquency amount in the Second Amended Final Judgment Entry, given the Center's knowledge, constructive or otherwise, of R.C. 5721.19(D)(3), the Center's purported reliance on the tax delinquency amount in the Second Amended Final Judgment Entry was not reasonable. As such, the Center's first argument in support of its assignment of error is rejected.[3]

{¶ 10} The Center next argues, in rather summary fashion, that its due process rights were violated. "Embodied in the Fifth and Fourteenth Amendments to the U.S. Constitution, and in Article I, Section 16 [of the] Ohio Constitution, the right to due process is fundamentally the opportunity to be heard 'at a meaningful time and in a meaningful way.' " *Rice*, 2019-Ohio-3396, 142 N.E.3d 156, at ¶ 9, quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S.

---

[3] This conclusion is consonant with the principle that " 'an occasional hardship may accrue to one who negligently fails to ascertain the authority vested in [a] public agenc[y] with whom he deals. In such [an] instance[ ], the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit.' " *Shampton* at ¶ 35, quoting *Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173, 214 N.E.2d 408 (1966), quoting *McCloud & Geigle v. Columbus*, 54 Ohio St. 439, 452-453, 44 N.E. 95 (1896). Moreover, this conclusion is consistent with the nature of a tax foreclosure procedure which "is * * * [an action] in rem and not in personam, it operates on the land itself and not on the title of the one in whose name the property is listed for tax action." *In the Matter of Foreclosure of Liens for Delinquent Taxes v. Parcels of Land Encumbered with Delinquent Tax Liens*, 2d Dist. Clark No. 2007-CA-127, 2008-Ohio-5358, ¶ 8, quoting *Long v. Long*, 11th Dist. Trumbull No. 2007-T-47, 2007-Ohio-5909, ¶ 38, quoting *Hunter v. Grier*, 173 Ohio St. 158, 161, 180 N.E.2d 603 (1962). Given this focus upon the land, as opposed to the owner of the property, it would be quite difficult for a property owner to successfully assert an equitable estoppel claim in a tax foreclosure case.

545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Center argues due process required the trial court to provide it with "a reasonable opportunity to argue that the Treasurer [is] estopped from being paid more than the amount of the judgment." The Center then paradoxically states that, "in fact, the [Center's] Motion To Recover Excess Proceeds, which was filed prior to the Confirmation Entry, should have been granted, and [the] excess funds, after * * * satisfaction of the judgment, [paid] to the [Center]." Thus, the Center concedes that it had notice of the issue and an opportunity to present its "excess proceeds" argument to the trial court. The Center's due process argument fails.

## Conclusion

{¶ 11} Having rejected both arguments the Center advances in support of its assignment of error, the assignment of error is overruled.

{¶ 12} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .


HALL, J. and EPLEY, J., concur.


Copies sent to:

Nathaniel S. Peterson
Thomas J. Brodbeck
Michele Phipps
Worrell A. Reid
Hon. Mary Katherine Huffman